LAW OFFICES OF MAURO FIORE, JR.
Mauro Fiore, Jr., State Bar No. 196857
mfiore@fiorelegal.com
Sergio J. Puche, State Bar No. 289437
spuche@fiorelegal.com
136 E. Lemon Ave.
Monrovia, CA 91016
Telephone:  (626) 856-5856
Facsimile:  (626) 386-5520

MESSNER REEVES LLP
Amish Shah (CA State Bar No. 263181)
ashah@messner.com
11620 Wilshire Blvd., Suite 500
Los Angeles, CA 90025
Telephone:  (310) 909-7440
Facsimile:  (310) 889-0896

MESSNER REEVES LLP
Charles C. Cavanagh (CA State Bar No. 198468)
ccavanagh@messner.com
Bradley G. Grumbley (CA State Bar No. 265265)
bgrumbley@messner.com
1430 Wynkoop Street, Suite 300
Denver, Colorado  80202
Telephone:  (303) 623-1800
Facsimile:  (303) 623-0552

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANA M. HARLEY, | Case No. 2:15-CV-02495-TLN-AC |
| Plaintiff, | |
| v. | **JOINT RULE 281 (Fed. R. Civ. P. 16) PRETRIAL STATEMENT** |
| CHIPOTLE SERVICES, LLC, et al., A Corporation, And DOES 1 To 25, Inclusive, | |
| Defendants. | Removal Date:        October 26, 2015<br>Trial Date:            December 11, 2017 |

1       Plaintiff, ANA M. HARLEY and Defendant, CHIPOTLE SERVICES, LLC, by and

2   through their respective attorneys of record, respectfully submit their Joint PRETRIAL

3   STATEMENT Report pursuant to Federal Rule of Civil Procedure 16, and this Court's Order as

4   follows:

5   **RULE 16 PRETRIAL STATEMENT**

6       Plaintiff, Ana M. Harley is represented by Mauro Fiore, Jr., and Sergio Puche of the Law

7   Offices of Mauro Fiore, Jr., A.P.C. Defendant, Chipotle Services, LLC, is represented by Amish

8   Shah, Bradley Grumbley and Charles Cavanagh of Messner Reeves, LLP.

9   **I.      JURISDICTION – VENUE**

10      On October 26, 2015, the lawsuit was successfully removed to the United States District

11  Court for the Central District of California pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.  As

12  stated above, Plaintiff is a former Chipotle employee who worked at Chipotle's Davis restaurant.

13  As such, on November 23, 2015, the parties stipulated to transfer this case to the Eastern District

14  of California pursuant to 28 U.S.C. § 1404(a). [Dkt. #11].  On November 25, 2015, the Central

15  District ordered the case transferred to the Eastern District pursuant to 28 U.S.C. §1404(a). [Dkt.

16  #12].

17  **II.     JURY**

18      Plaintiff demands a Trial by Jury.

19  **III.    UNDISPUTED FACTS**

20      Plaintiff, Ana Harley was employed by Defendant, Chipotle Services, LLC as a non-

21  exempt employee from on or about September 15, 2001 to February 23, 2003, and again from

22  March 3, 2003 until her termination on August 11, 2014. Ms. Harley's first language is Spanish.

23  Ms. Harley can read and write in English, however, she speaks English with an accent. Ms.

24  Harley often communicated with her employees in Spanish. Throughout her employment Ms.

25  Harley rose through the Chipotle ranks from crew member to General Manager.

26

27

28

1
**JOINT RULE 281 (Fed. R. Civ. P. 16) PRETRIAL STATEMENT**

## IV.      DISPUTED FACTUAL ISSUES

### A.      Plaintiff's Disputed Factual Issues

During the majority of Ms. Harley's time as General Manager, she was under the supervision of Ms. Brenda Pereira. During many of Ms. Pereira's visits to the store in which Plaintiff worked, Ms. Pereira would ridicule Plaintiff about her Spanish accent and laugh at her for the way she spoke. Additionally, Ms. Pereira reprimanded Plaintiff for speaking her native Spanish language to other Spanish speaking employees. Moreover, Ms. Pereira instructed Plaintiff to terminate the employment of employees that either did not speak English or had very limited English speaking skills. Ms. Pereira threatened to terminate Ms. Harley on several occasions if she did not terminate non-English speaking employees underneath her, or if she continued to speak in Spanish at the restaurant. Chipotle has a program that rewards area managers, with a $10,000.00 bonus for developing and promoting General Managers to Restauranteur.  Ms. Harley was being evaluated for the Restauranteur position at Chipotle. Ms. Ms. Pereira once wrote the work "Boo" on Ms. Harley's hand and proceeded to spit on Ms. Harley's hand and clean it by rubbing the spit with her hand. Ms. Harley made a complaint of this incident to Management. Ms. Pereira was relocated and Mr. Patrick O'Brien supervised Ms. Harley's restaurant and conducted site visits in the interim, while a full-time Supervisor was chosen. Rochelle Davis then became Ms. Harley's supervisor. Ms. Rochelle Davis made the determination to Terminate Ms. Harley.

### B.      Defendant's Disputed Factual Issues

Plaintiff was a subpar general manager who oversaw Chipotle's E-Street Store ("E-Street Store").  At the period of time in question, Chipotle had implemented a "Restaurateur" program, which provided financial incentives to individuals and stores who maintained teams of top performers who were empowered to achieve high standards.  For a store to achieve Restaurateur status, a general manager needed to be selected, and validated, by his/her managers and field leaders to ensure that he/she was set up for success.  To be selected to take on more responsibilities, a general manager needed to have been a top performer with potential who had

1   trained his/her replacement for the position he/she was currently working.  He/She must also

2   have had the support of the entire team, and they, too, would be required to identify the general

3   manager as a top performer who had had an impact on them.

4         Aside from the write-ups Plaintiff received and the deterioration of her performance (as

5   indicated by her performance reviews) as a general manager, Plaintiff was identified by her

6   superiors as an individual who was holding back the Chipotle store from being elevated to

7   Restaurateur status. On multiple occasions, and by Plaintiff's own admission, different managers

8   and field leaders who were decision makers as to whether the E-Street store was ready to be

9   validated as a Restaurateur store, audited, and ultimately failed the store.  After sitting down with

10  E-Street employees, it became more and more evident, and reinforced to Plaintiff's superiors

11  what was already documented in prior store audits - that Plaintiff was a manager who led through

12  fear who was not correcting identified deficiencies in her performance, and who did not have the

13  support of her team.  Moreover, Plaintiff's assistant store manager (also known as an

14  "Apprentice"), was also identified as a low performer due to Plaintiff's unwillingness and

15  inability to elevate her.  After numerous attempts at assisting Plaintiff correct her performance

16  deficiencies, Plaintiff was ultimately terminated on August 11, 2014.

17  **V.     DISPUTED EVIDENTIARY ISSUES**

18        Defendant disputes the admissibility of Plaintiff's anticipated testimony that any

19  emotional distress she suffered was because of the fact that Defendant (or any of its supervisors,

20  past or present) discriminated against, retaliated against, or harassed her, in light of (1) the

21  production of documents by Plaintiff's healthcare providers indicating pre-existing emotional

22  distress issues and (2) Plaintiff's deposition testimony that no health care professional has ever

23  attributed any of her (or her daughter's) distress to discriminatory/harassing/retaliatory conduct

24  at Chipotle.  Such dispute should be, but is not limited to, the subject of resolution by motion *in*

25  *limine*.

26        Defendant also disputes the admissibility of witnesses (including but not limited to those

27  identified in this document) and documents that have not been previously disclosed. Defendant

28

**JOINT RULE 281 (Fed. R. Civ. P. 16) PRETRIAL STATEMENT**

1   believes that any witness or document nor previously disclosed should be stricken.  Should the

2   Court not be inclined to strike such witnesses/documents at the final pre-trial conference, such

3   dispute should be, but is not limited to, the subject of resolution by motion *in limine*.

4   **VI.      SPECIAL FACTUAL INFORMATION**

5           Not applicable.

6   **VII.     RELIEF SOUGHT**

7           Ms. Harley claims an award for General Damages against Defendant's for all FEHA

8   causes of action, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional

9   Distress, Negligent and Unfair Competition. Ms. Harley claims just compensation according to

10  proof at time of trial for the UCL claims and Cal. Lab. Code claims. Ms. Harley claims punitive

11  damages in an amount appropriate to punish Defendant's and to make an example of Defendants

12  to the community. Ms. Harley claims attorney's fees in an amount according to proof. Ms.

13  Harley claims interest in an amount according to proof.

14  **VIII.    POINTS OF LAW**

15          **A.      Plaintiff's Points of Law**

16          It is an unlawful employment practice, unless based upon a bona fide occupational

17  qualification, or, except where based upon applicable security regulations established by the

18  United States or the State of California:(a) For an employer, because of the race, religious creed,

19  color, national origin, ancestry, physical disability, mental disability, medical condition, genetic

20  information, marital status, sex, gender, gender identity, gender expression, age, or sexual

21  orientation of any person, association, or engaging in protected conduct, to refuse to hire or

22  employ the person or to refuse to select the person for a training program leading to employment,

23  or to bar or to discharge the person from employment or from a training program leading to

24  employment, or to discriminate against the person in compensation or in terms, conditions, or

25  privileges of employment. (See, Cal. Gov. Code § 12940-12941, 42 USC 1981; 42 USC

26  §§2000e-2000e-17; 29 U.S.C. §§621-634).

27

28

1    The FEHA's protection against workplace retaliation states that: "It is an unlawful

2    employment practice . . . [f]or any employer, labor organization, employment agency or person

3    to discharge, expel, or otherwise discriminate against any person because the person has opposed

4    any practices forbidden under this part or because the person has filed a complaint, testified, or

5    assisted in any proceeding under this part." (Gov. Code, § 12940(h)).

6    To satisfy a prima facie case of workplace retaliation, a Plaintiff must show: 1) That he or

7    she was engaged in a protected activity; 2) That there was an adverse job action; and 3) There

8    was a causal link between the Plaintiff's engagement in the protected activity and the adverse job

9    action.

10   Engaging in a protected activity is when an employee, applicant or contractor: 1)

11   Opposes an unlawful employment practice; or 2) Files a complaint, testifies, or assists in a

12   proceeding under the law.

13   An adverse job action is when an employer: 1) Refuses to hire or employ; 2) Refuses to

14   select for training program leading to employment; 3) Bars or discharges from employment or

15   training program leading to employment; or 4) Discriminates in terms of compensation or in

16   terms, conditions or privileges of employment.

17   The causal link can be proved by circumstantial evidence showing: 1) The employer was

18   aware of the Plaintiff's engagement in a protected activity; and 2) The adverse job action

19   followed within a relatively short period in time.

20   Any employment, having no specified term, may be terminated at the will of either party

21   on notice to the other. Employment for a specified term means an employment for a period

22   greater than one month. Having no specified term, the employment is terminable at the will of

23   either party, even if the employee's salary is negotiated annually. Labor Code §2922; Foley v.

24   Interactive Data Corp. (1988), 47 Cal.3d 654, 678. However, Public Policy violations and

25   Statutory Protections as discussed above are exceptions to the At-Will presumption.

26   An employer may not discharge an at will employee for a reason that violates

27   fundamental public policy or Statutory Provision. This exception is enforced through a tort law

28

5

by permitting the discharged employee to assert against the employer a cause of action for wrongful discharge in violation of fundamental policy." *Tamney v. Atlantic Richfield Co.* (1980), 27 Cal.3d 167, 170.

Case law holds that Defendant is liable even in "Mixed Motive" cases, where Defendant's argue that the Termination involved situations where there was a "mix of discriminatory and legitimate reasons" for motivating an employer's decision, where the Plaintiff proves that the discriminatory characteristic was "a substantial motivating reason" for the termination and the employer cannot prove their burden that if would have made the same decision in any case for non-discriminatory reasons. *Harris v. City of Santa Monica* (2013), 56 Cal.4th 203.

Cal. Lab. Code § 200 provides that:

As used in this article:

(a) "Wages" includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, Commission basis, or other method of calculation.

(b) "Labor" includes labor, work, or service whether rendered or performed under contract, subcontract, partnership, station plan, or other agreement if the labor to be paid for is performed personally by the person demanding payment.

Cal. Lab. Code § 202 provides, in relevant part, that:

If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address. The date of the mailing shall constitute the date of payment for

purposes of the requirement to provide payment within 72 hours of the notice

of quitting.

Cal. Lab. Code § 203 provides:

If an employer willfully fails to pay, without abatement or reduction, in

accordance with Sections 201, 201.5, 202, and 205.5, any wages of an

employee who is discharged or who quits, the wages of the employee shall

continue as a penalty from the due date thereof at the same rate until paid or

until an action therefor is commenced; but the wages shall not continue for

more than 30 days.

Cal. Lab. Code § 226 provides:

Employee is entitled to the greater of all actual damages or $50.00 (fifty

dollars) for the initial pay period in which a violation occurs and one hundred

dollars ($100.00) for each violation in a subsequent pay period, not exceeding

an aggregate penalty of four thousand dollars ($4,000.00), and an award of

costs.

**B.     Defendant's Points of Law**

To state a prima facie case of discrimination under FEHA, Plaintiff must establish that:

(1) she was a member of a protected class; (2) she was performing competently in the position(s)

she held; (3) she suffered an adverse employment action, such as termination; and (4) some other

circumstance that suggests discriminatory motive. *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317,

355 (2000).

"[I]n order to establish a prima facie case of retaliation under the FEHA, a plaintiff must

show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to

an adverse employment action, and (3) a causal link existed between the protected activity and

the employer's action."  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005); *see also*

*Metoyer v. Chassman*, 504 F.3d 919, 941 (9th Cir. 2007) ("California Courts apply the Title VII

Framework to claims brought under FEHA").

1    Once an employee establishes a prima facie case, the employer is required to offer a

2  legitimate, non-discriminatory, non-retaliatory reason for the adverse employment action.

3  *Yanowitz*, 36 Cal. 4th at 1042; *Horn v. Cushman & Wakefield Western, Inc.*, 72 Cal. App 4th

4  798, 809 (1999). "If the employer produces a legitimate reason for the adverse employment

5  action, the presumption of retaliation [and discrimination] 'drops out of the picture' and the

6  burden shifts back to the employee to prove intentional retaliation." *Yanowitz*, 36 Cal. 4th at

7  1042. "The ultimate burden of persuasion on the issue of actual discrimination remains with the

8  plaintiff." *Guz*, 24 Cal. 4th at 356.

9    To prevail on a claim for termination in violation of public policy, an employee must

10  show (1) an employer-employee relationship; (2) termination of employment; (3) the termination

11  was a violation of public policy; (4) the termination was the legal cause of the plaintiff's

12  damages; and (5) damages. *See Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167, 172 (1980).  In

13  order to satisfy the third element of this claim, a "nexus" must be shown between the employee's

14  protected activity and the adverse action taken against the employee. *See Turner v. Anheuser-*

15  *Busch, Inc.*, 7 Cal. 4th 1238, 1258-1259 (1994) (affirming summary judgment for employer

16  where plaintiff could not "demonstrate the required nexus between his reporting of alleged

17  statutory violations and his allegedly adverse treatment").  If an employer demonstrates

18  legitimate, non-discriminatory, non-retaliatory reasons for a termination, a plaintiff cannot

19  establish a nexus between his termination and any purported violation of the FEHA.  *See Rope v.*

20  *Auto-Chlor Sys. of Wash., Inc.*, 220 Cal. App. 4th 635, 660 n.15 (2013) (noting that, to the extent

21  that plaintiff's wrongful termination in violation of public policy claim was based on an

22  allegation of retaliation, it failed for the same reason as did his purported claim under

23  Government Code section 12940(h)).

24    To prevail on a claim of Intentional Infliction of Emotional Distress, a plaintiff must

25  prove, among other things, that Chipotle engaged in conduct "so extreme and outrageous as to go

26  beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

27  a civilized community." *Alcorn v. Anbro Eng., Inc.*, 2 Cal. 3d. 493, 499 n.5 (1970).

28

8

**JOINT RULE 281 (Fed. R. Civ. P. 16) PRETRIAL STATEMENT**

1   The Immigration Reform and Control Act of 1986 denies employment to aliens who are

2   not authorized to work in the United States and has been held to prohibit illegal aliens from

3   receiving as damages "wages that could not lawfully have been earned." *Hoffman Plastic*

4   *Compounds, Inc. v. N.L.R.B.*, 535 U.S. 137, 149 (2002).  Thus, although California Labor Code

5   section 1171.5 typically makes immigration status irrelevant to the issue of liability under labor

6   and employment laws, when an employee seeks to recover lost earnings, immigration status is

7   relevant under federal law because such damages "would reward *unperformed* work in a job that

8   could not lawfully have been obtained, and … may provide the illegal alien a bonus due to his or

9   her inability to mitigate damages by working in the United States." *Farmers Bros. Coffee v.*

10   *Worker's Compensation Appeals Bd.*, 133 Cal. App. 4th 533, 541 (2005) (emphasis in original).

11   Under California law, "[a]n employer shall not be liable for [punitive] damages … based

12   upon acts of an employee of the employer, unless the employer had advance knowledge of the

13   unfitness of the employee and employed him or her with a conscious disregard of the rights or

14   safety of others or authorized or ratified the wrongful conduct for which the damages are

15   awarded or was personally guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(b; *see*

16   *also Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1154 (1998) ("The 'additional' burden

17   on a plaintiff seeking punitive damages from an employer is to show not only that an *employee*

18   acted with oppression, fraud or malice, but that the *employer* engaged in conduct defined in

19   subdivision (b).") (emphasis in original).  Moreover, "[w]ith respect to a corporate employer, the

20   advance knowledge and conscious disregard, authorization, ratification or act of oppression,

21   fraud, or malice must be on the part of an officer, director, or managing agent of the

22   corporation."  Cal. Civ. Code § 3294(b). Further, for purposes of determining corporate liability

23   for punitive damages, the term "managing agent" includes "only those corporate employees who

24   exercise substantial independent authority and judgment in their corporate decision making so

25   that their decisions ultimately determine corporate policy."  *White v. Ultramar, Inc.*, (1999) 21

26   Cal. 4th 563, 567, 88 Cal. Rptr. 2d 19; *see also Egan v. Mutual of Omaha, Ins. Co.*, (1979) 24

27   Cal. 3d 809, 823 ("The determination of whether employees act in a managerial capacity … does

28

9

**JOINT RULE 281 (Fed. R. Civ. P. 16) PRETRIAL STATEMENT**

1  not necessarily hinge on their level in the corporate hierarchy.  Rather, the critical inquiry is the

2  degree of discretion the employees possess in making decisions that will ultimately determine

3  corporate policy.").

4  **IX.**    **ABANDONED ISSUES**

5        As of the drafting of this document, Plaintiff has not abandoned any of the issues in her

6  claims against Defendant.

7  **X.**    **WITNESSES**

8        **SCOTT HARLEY**

9        Plaintiff's Husband

10       To be contacted through Counsel.

11       Information includes: Knowledge of Plaintiff's change throughout her employment at

12  Defendant.

13       **ROY MORENO**

14       Plaintiff's Son

15       (916) 333-1527

16       To be contacted through Counsel.

17       Information includes: Knowledge of Plaintiff's change throughout her employment at

18  Defendant.

19       **EVA MARTINEZ**

20       Plaintiff's Sister

21       (530) 554-5661

22       Information includes: Knowledge of Plaintiff's change throughout her employment at

23  Defendant.

24       **ANNETTE BARBA**

25       Plaintiff's Friend

26       (530) 400-7015

27

28

**JOINT RULE 281 (Fed. R. Civ. P. 16) PRETRIAL STATEMENT**

1      Information includes: Knowledge of Plaintiff's complaints of discriminatory practices

2  throughout her employment at Defendant.

3      **PATRICK O'BRIEN**

4      Chipotle Apprentice Team Lead

5      **BRENDA PEREIRA**

6      Former Chipotle Area Manager

7      **ROCHELLE DAVIS**

8      Former Chipotle Area Manager

9      **CHRISTOPHER CAMERON**

10      Chipotle Restaurateur Field Auditor

11      **ASUSENA LOPEZ**

12      Chipotle General Manager

13      **YARVE ORDONEZ**

14      Chipotle Apprentice

15      **BRIDGETT RANGEL-REXFORD**

16      Former Chipotle Crew Member

17      **DALIA REYES VASQUEZ**

18      Former Chipotle Apprentice

19      **YVONNE MCCLENDON**

20      Chipotle Team Leader

21      **TOM RAWLINS**

22      Chipotle Executive Team Director

23      **ESTRELLA GONZALEZ**

24      Chipotle General Manager

25      **KAREN WEBER**

26      Former Chipotle Executive Team Director

27

28

**JOINT RULE 281 (Fed. R. Civ. P. 16) PRETRIAL STATEMENT**

XI.   **EXHIBITS**

    A.   **Plaintiff expects to offer the following at Trial:**

    1.   True and correct copies of Earnings Statements received by Plaintiff from Chipotle;

    2.   True and correct copy of Plaintiff's email to Karen Weber dated June 3, 2012;

    3.   True and correct copy of an Audit of Plaintiff conducted on August 11, 2013;

    4.   True and correct copy of Plaintiff's Performance Review dated 9/2013;

    5.   True and correct copy of Plaintiff's Performance Discussion dated 10/1/2013;

    6.   True and correct copy of Plaintiff's Performance Discussion dated 10/8/2013;

    7.   True and correct copy of Human Resources Letter dated 3/15/2014;

    8.   True and correct copy of an email from Tom Rawlins dated March 26, 2014;

    9.   True and correct copy of a Restaurant Visit Summary dated May 27, 2014;

    10.  True and correct copy of the Complaint of Discrimination filed with the Department of Fair Employment and Housing and corresponding Right to Sue Letter dated March 30, 2015;

    11.  True and correct copy of a letter from Plaintiff to the EEOC.

    12.  True and correct copy of Chipotle Restaurant Management Handbook dated January 2014;

    13.  True and correct copy of "The Journey to Restauranteur" documents Bates stamped CMG/6842–001556;

    14.  True and correct copy of "Restauranteur – Overview" document Bates stamped CMG/6842–00896;

    15.  Deposition of Ana Harley

    16.  Deposition of Patrick O'Brien

    B.   **Defendant expects to offer the following at Trial:**

    1.   2013 Performance Review (signed 3/10/14).  (CMG/6842–000001-CMG/6842–000005.)

**JOINT RULE 281 (Fed. R. Civ. P. 16) PRETRIAL STATEMENT**

2.      2013 Restaurant Management Performance Review (self-review).  (CMG/6842–000006-CMG/6842–000013.)

3.      Plaintiff's Pay Stubs.  (CMG/6842–000054-CMG/6842–000204.)

4.      Job Description – General Manager.  (CMG/6842–000205-CMG/6842–000206.)

5.      Job Description – Apprentice July 2010.  (CMG/6842–000207-CMG/6842–000208.)

6.      Job Description – Apprentice January 2011.  (CMG/6842–000209-CMG/6842–000211.)

7.      Job Description – Apprentice.  (CMG/6842–000212-CMG/6842–000215.)

8.      Job Description – Supervisor.   (CMG/6842–000216-CMG/6842–000218.)

9.      2014 Salaried Benefits Guide – CA.  (CMG/6842–000219-CMG/6842–000236.)

10.     2014 Restaurant Management Handbook.  (CMG/6842–000237-CMG/6842–000292.)

11.     2012 Restaurant Management Handbook.  (CMG/6842–000293-CMG/6842–000344.)

12.     2011 Restaurant Management Handbook.  (CMG/6842–000345-CMG/6842–000394.)

13.     2010 Restaurant Management Handbook.  (CMG/6842–000395-CMG/6842–000444.)

14.     2008 Restaurant Management Handbook.  (CMG/6842–000445-CMG/6842–000487.)

15.     2007 Crew Handbook.  (CMG/6842–000488-CMG/6842–000521.)

16.     Respectful Workplace Training for Managers - 2011.  (CMG/6842–000522-CMG/6842–000669.)

17.     2005 Crew Handbook.  (CMG/6842–000670-CMG/6842–000687.)

18.     Respectful Workplace Poster.  (CMG/6842–000688.)

19.     Federal Labor Law Poster.  (CMG/6842–000689.)

**JOINT RULE 281 (Fed. R. Civ. P. 16) PRETRIAL STATEMENT**

20.    California Labor Law Poster.  (CMG/6842–000690.)

21.    Job Description – Service Manager.  (CMG/6842–000691-CMG/6842–000693.)

22.    2013 Restaurant Management Performance Review (review of Plaintiff's performance in first half of 2013).  (CMG/6842–000694- CMG/6842–000698.)

23.    2012 Restaurant Management Performance Review (review of Plaintiff's performance in first half of 2012).  (CMG/6842–000699- CMG/6842–000703.)

24.    2012 Restaurant Management Performance Review (review of Plaintiff's performance in second half of 2012).  (CMG/6842–000704- CMG/6842–000708.)

25.    2011 Restaurant Management Performance Review (review of Plaintiff's performance in first half of 2011).  (CMG/6842–000709- CMG/6842–000714.)

26.    2010 Restaurant Management Performance Review (review of Plaintiff's performance in 2010).  (CMG/6842–000715- CMG/6842–000721.)

27.    2009 Restaurant Management Performance Review (review of Plaintiff's performance in 2009).  (CMG/6842–000722- CMG/6842–000727.)

28.    2008 Restaurant Management Performance Review (review of Plaintiff's performance in 2008).  (CMG/6842–000728- CMG/6842–000733.)

29.    Hourly to Salary Checklist.  (CMG/6842–000734.)

30.    Employee Information Form. (CMG/6842–000735.)

31.    Chipotle Record re: New Hire Effective Date.  (CMG/6842–000736.)

32.    Status Change Form (rec'd 11/23/11) re: Compensation Change.  (CMG/6842–000737.)

33.    November 23, 2011 Email from Plaintiff re: status change.  (CMG/6842–000738.)

34.    Status Change Form (effective date: 1/31/11) re: Promotion to GM.  (CMG/6842–000739.)

35.    Annual Base Compensation "Calculation Worksheet" re: Plaintiff's Compensation.  (CMG/6842–000740.)

36.    January 26, 2011 Email re: Plaintiff's promotion.  (CMG/6842–000741-

CMG/6842–000742.)

37.   January 16, 2008 Email re: Status Change.  (CMG/6842–000743-CMG/6842–000744.)

38.   January 22, 2008 Email re: Status Change Form re: Plaintiff's FMLA Leave. (CMG/6842–000745-CMG/6842–000747.)

39.   Respectful Workplace Training Signed Acknowledgement Form (signed 6/7/12). (CMG/6842–000748.)

40.   Respectful Workplace Training Signed Acknowledgement Form (signed 3/18/10). (CMG/6842–000749.)

41.   Zero Tolerance Policy Signed Acknowledgement Form (signed 1/15/08). (CMG/6842–000750.)

42.   Cash Handling Policies and Responsibilities Signed Acknowledgement Form (signed 3/18/08).  (CMG/6842–000753.)

43.   Cash Handling Policies and Responsibilities Signed Acknowledgement Form (signed 2/4/08).  (CMG/6842–000754.)

44.   Crew Handbook Signed Acknowledgement Form (signed 7/16/07).  (CMG/6842–000755.)

45.   Cash Handling Policies and Responsibilities Signed Acknowledgement Form (signed 6/20/07).   (CMG/6842–000756.)

46.   June 8, 2006 Sutter Occupational Work Status Form.  (CMG/6842–000757.)

47.   July 18, 2006 Sutter Occupational Work Status Form.  (CMG/6842–000762.)

48.   Plaintiff's 2005 W-4.  (CMG/6842–000763.)

49.   Plaintiff's 2/23/06 Termination Form.  (CMG/6842–000764.)

50.   February 23, 2006- February 27, 2006 Email chain re: Plaintiff's 2/23/06 Termination and Lack of Proper Legal Documentation.  (CMG/6842–00065-CMG/6842–000767.)

51.   February 23, 2006 Email re: Plaintiff's 2/23/06 Termination.  (CMG/6842–

000768.)

52. Plaintiff's PeopleSoft Records (CMG/6842–000769-CMG/6842–000792.)

53. Plaintiff's Workday Worker History (CMG/6842–000793-CMG/6842–000794.)

54. Plaintiff's Workday Worker History (CMG/6842–000795-CMG/6842–000797.)

55. Plaintiff's Pay Stubs (CMG/6842–000798-CMG/6842–000871.)

56. Plaintiff's W-2s (CMG/6842–000872-CMG/6842–000876.)

57. Plaintiff's Final Paycheck Backup Documentation (CMG/6842–000876-CMG/6842–000885.)

58. Plaintiff's Letter to Chipotle (CMG/6842–000886-CMG/6842–000886.)

59. Job Description – Crew (CMG/6842–000887-CMG/6842–000889.)

60. Job Description – Restaurateur (CMG/6842–000890-CMG/6842–000892.)

61. Job Description – Restaurateur (CMG/6842–000893-CMG/6842–000895.)

62. Job Description – R2 Through R4 (CMG/6842–000896-CMG/6842–000898.)

63. Job Description – Area Manager (CMG/6842–000899-CMG/6842–000901.)

64. 2007 Respectful Workplace Training for Crew (CMG/6842–000902-CMG/6842–000967.)

65. 2007 Respectful Workplace Training for Managers (CMG/6842–000968-CMG/6842–001051.)

66. 2008 Cash Handling Polices and Responsibilities (CMG/6842–001052-CMG/6842–001150.)

67. 2008 Hourly Benefits Guide (CMG/6842–001151-CMG/6842–001186.)

68. 2011 Hourly Benefits Guide (CMG/6842–001187-CMG/6842–001226.)

69. 2012 Respectful Workplace E-Learning – Managers (CMG/6842–001227-CMG/6842–001306.)

70. 2012 Salaried Benefits Guide (CMG/6842–001307-CMG/6842–001340.)

71. 2013 Benefits Guide (CMG/6842–001341-CMG/6842–001374.)

72. 2014 (2nd Half) Semi-Annual Bonus Plan (CMG/6842–001375-CMG/6842–

**JOINT RULE 281 (Fed. R. Civ. P. 16) PRETRIAL STATEMENT**

001378.)

73.  2014 CA Compliance Back of the House Poster (CMG/6842–001379-CMG/6842–001379.)

74.  2014 Development Journal Crew Training Guide (CMG/6842–001380-CMG/6842–001489.)

75.  2014 Semi-Annual Bonus Plan - January to June 2014 (CMG/6842–001490-CMG/6842–001493.)

76.  Chipotle.com - Roll Your Way to the Top (CMG/6842–001555-CMG/6842–001555.)

77.  Journey to Restaurateur Poster (CMG/6842–001556-CMG/6842–001556.)

78.  Managers Guide to Performance Reviews and the Merit Increase Process (CMG/6842–001557-CMG/6842–001557.)

79.  Road to Restaurateur (CMG/6842–001558-CMG/6842–001558.)

80.  September 7, 2013 Email.  (CMG/6842–001630-CMG/6842–001631.)

81.  October 17, 2013 Plan for Building a Restaurateur Culture.  (CMG/6842–001632-CMG/6842–001634.)

82.  January 21, 2014 Email.  (CMG/6842–001635-CMG/6842–001640.)

83.  February 2, 2014 Email.   (CMG/6842–001641-CMG/6842–001646.)

84.  March 5, 2014 Plan for Building a Restaurateur Culture.  (CMG/6842–001647-CMG/6842–001652.)

85.  May 27, 2014 Plan for Building a Restaurateur Culture.  (CMG/6842–001653-CMG/6842–001659.)

86.  August 7, 2014 Plan for Building a Restaurateur Culture.  (CMG/6842–001660-CMG/6842–001666.)

87.  Subpoena To Produce Documents, Information, Or Objects, Or To Permit Inspection Of Premises in a Civil Action to Blaze Pizza, dated November 17, 2015. (BLAZE 000001- BLAZE 000004.)

88.   Blaze Pizza Declaration of Custodian of Records.  (BLAZE 000068-BLAZE 000069.)

89.   Ana Harley Resume.  (BLAZE 000006.)

90.   Ana Harley Direct Deposit Forms for Blaze Pizza.  (BLAZE 000007- BLAZE 000008.)

91.   Ana Harley Employment Eligibility Verification Documents for Blaze Pizza. (BLAZE 000009- BLAZE 000011.)

92.   Ana Harley W-4 for Blaze Pizza.  (BLAZE 000012.)

93.   Blaze Pizza Offer Letter to Ana Harley.  (BLAZE 000013.)

94.   Blaze Pizza Offer Employee Handbook Acknowledgment for Ana Harley. (BLAZE 000014.)

95.   Blaze Pizza Offer Employee Status Change for Ana Harley.  (BLAZE 000015.)

96.   eFoodhandlers Certification of Completion for Ana Harley.  (BLAZE 000016.)

97.   Blaze Pizza Notice to Employee for Ana Harley.  (BLAZE 000017.)

98.   Blaze Pizza Worker's Compensation for Ana Harley.  (BLAZE 000018.)

99.   Blaze Pizza NRO Team Professional Conduct Agreement for Ana Harley. (BLAZE 000019.)

100.  Blaze Pizza Confidentiality and Non-Disclosure Agreement for Ana Harley. (BLAZE 000020.)

101.  Blaze Pizza Training Expense Policy for Ana Harley.  (BLAZE 000024.)

102.  Blaze Pizza Image Release for Ana Harley.  (BLAZE 000025.)

103.  Blaze Pizza Employee Agreement – Acknowledgement of Receipt for Ana Harley.  (BLAZE 000026.)

104.  Blaze Pizza Paid Time Off Request for Ana Harley.  (BLAZE 000027.)

105.  Blaze Pizza Employee Status Change for Ana Harley.  (BLAZE 000028.)

106.  Blaze Pizza Payroll Register for Ana Harley.  (BLAZE 000029- BLAZE 000051.)

107.  Blaze Pizza Payroll Register for Ana Harley.  (BLAZE 000074- BLAZE 000092.)

108. Ana Harley Pay Stubs for Blaze Pizza.  (BLAZE 000093- BLAZE 000099.)

109. Blaze Pizza Training Schedule for Ana Harley.  (BLAZE 000104- BLAZE 000113.)

110. Liberty Mutual Job Analysis for Ana Harley.  (BLAZE 000114- BLAZE 000121.)

111. Blaze Pizza Memorandum to Ana Harley.  (BLAZE 000122- BLAZE 000123.)

112. Mercy Medical Group Doctor's Notes for Ana Harley.  (BLAZE 000124- BLAZE 000125.)

113. Ana Harley Paid Time off Request.  (BLAZE 000126.)

114. Liberty Mutual Definitions of Physical Activities.  (BLAZE 000127- BLAZE 000129.)

115. Blaze Pizza Assistant Manager Job Description.  (BLAZE 000129- BLAZE 000130.)

116. Blaze Pizza Performance Review for Ana Harley.  (BLAZE 000131- BLAZE 000133.)

117. Ana Harley Paid Time off Request.  (BLAZE 000134- BLAZE 000135.)

118. Ana Harley Weekly Time Sheet.  (BLAZE 000134- BLAZE 000136.)

119. Mercy Medical Group Doctor's Notes for Ana Harley.  (BLAZE 000137.)

120. Ana Harley Certificate of Sexual Harassment Training for Supervisors.  (BLAZE 000138.)

121. Subpoena To Produce Documents, Information, Or Objects, Or To Permit Inspection Of Premises in a Civil Action to Dignity Health Medical Foundation Documents, dated June 7, 2017.

122. Mercy Medical Group Return to Work/School for Ana Harley.  (DHMF_000001- DHMF_000002.)

123. Mercy Medical Group Chart Notes for Ana Harley.  (DHMF_000003- DHMF_000008.)

124. Mercy Medical Group Telephone Advice Record for Ana Harley.

**JOINT RULE 281 (Fed. R. Civ. P. 16) PRETRIAL STATEMENT**

1           (DHMF_000009- DHMF_000010.)

2     125.  Mercy Medical Group Medical Records for Ana Harley.  (DHMF_000011-

3           DHMF_000012.)

4     126.  Mercy Medical Group Chart Notes for Ana Harley.  (DHMF_000013-

5           DHMF_000015.)

6     127.  Mercy Medical Group Result Records for Ana Harley.  (DHMF_000016-

7           DHMF_00021.)

8     128.  Sierra Rehabilitation Medical Association Records.  (DHMF_000022-

9           DHMF_00025.)

10    129.  Mercy Medical Group Result Records for Ana Harley.  (DHMF_000026-

11          DHMF_00029.)

12    130.  Subpoena To Produce Documents, Information, Or Objects, Or To Permit

13          Inspection Of Premises in a Civil Action to Sutter Medical Foundation, dated

14          June 7, 2017.

15    131.  Sutter Medical Foundation Medical Records for Plaintiff, pursuant to subpoena

16          (SUTTER_ 000001- SUTTER_ 000074.)

17    132.  Sutter Medical Foundation Affidavit of Custodian of Records

18    133.  Subpoena To Produce Documents, Information, Or Objects, Or To Permit

19          Inspection Of Premises in a Civil Action to Judith Tischer, LMFT, dated July 17,

20          2017 (TISCHER_000001- TISCHER_000003)

21    134.  Judith Tischer, LMFT's Insurance Tracking Form for Plaintiff.

22          (TISCHER_000004.)

23    135.  Judith Tischer, LMFT's Intake Form for Ana Harley.  (TISCHER_000005.)

24    136.  Letter from ComPsych to Judith Tischer, LMFT's, dated July 4, 2011.

25          (TISCHER_000006.)

26    137.  Judith Tischer, LMFT's Treatment Agreement.  (TISCHER_000007.)

27    138.  Judith Tischer, LMFT's Wellness Assessment for Ana Harley.

28

**JOINT RULE 281 (Fed. R. Civ. P. 16) PRETRIAL STATEMENT**

(TISCHER_000008.)

139.  Judith Tischer, LMFT's Notes, dated July 11, 2011.  (TISCHER_000009-
TISCHER_000010.)

140.  Deposition of Ana Harley

141.  Deposition of Patrick O'Brien

142.  Plaintiff's Responses to Defendant's Interrogatories

143.  Plaintiff's Responses to Defendant's Requests for Production of Documents and
Document Production attached thereto

144.  Plaintiff's Complaint

145.  Plaintiff's Initial Disclosures

146.  Plaintiff's Department Of Fair Employment And Housing Complaint, dated
March 30, 2015

## XII.  DISCOVERY DOCUMENTS

Plaintiff and Defendant reserves the right to use the Deposition testimony and responses to written discovery at trial.

## XIII.  FURTHER DISCOVERY OR MOTIONS

Plaintiff has noticed the depositions of Brenda Pereira and Rochelle Davis, however, those individuals are no longer employed by the company. Plaintiff is currently investigating both individuals to locate each and subpoena deposition testimony.

## XIV.  STIPULATIONS

The Parties have not entered into any stipulations.

## XV.  AMENDMENTS – DISMISSALS

Plaintiff does not wish to make any amendment or dismissal.

## XVI.  SETTLEMENT NEGOTIATIONS

The parties have engaged in unfruitful settlement discussions – as of the date of the filing of this document, a settlement conference would not be helpful.

**JOINT RULE 281 (Fed. R. Civ. P. 16) PRETRIAL STATEMENT**

**XVII.  AGREED STATEMENTS**

Parties have not drafted an Agreed Statement of Facts.  However, the parties anticipate that an Agreed Statement of Facts would likely not be advisable.

**XVIII. SEPARATE TRIAL OF ISSUES**

Plaintiff believes that punitive damages should be bifurcated.

Defendant does not agree that any issues, including any issues relating to punitive damages, should be bifurcated.

**XIX.  IMPARTIAL EXPERTS – LIMITATION OF EXPERTS**

Appointment by the Court of impartial expert witnesses and limitation of the number of expert witnesses in unnecessary.

**XX.  ATTORNEYS' FEES**

Attorney's Fees are sought in this action and such a motion will be filed not later than twenty-eight (28) days after entry of final judgment.

**XXI.  TRIAL EXHIBITS**

At this time, the need for special handling of Trial Exhibits or court retention of exhibits pending appeal decision is unascertained.

**XXII. TRIAL PROTECTIVE ORDER**

None.

**XXIII. MISCELLANEOUS**

None.

DATED: October 12, 2017                LAW OFFICES OF MAURO FIORE, JR

                                       /s/ *Sergio J. Puche*
                                       (as authorized on October 12, 2017))
                                       Mauro Fiore, Jr.
                                       Sergio J. Puche
                                       Attorneys for Plaintiff

**JOINT RULE 281 (Fed. R. Civ. P. 16) PRETRIAL STATEMENT**

1 | DATED: October 12, 2017                        MESSNER REEVES LLP

2 |                                                 /s/ Amish Shah
                                                    Amish Shahs
3 |                                                 Bradley G. Grumbley
                                                    Charles C. Cavanagh
4 |                                                 Attorneys for Defendant

5 |

6 |

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

**JOINT RULE 281 (Fed. R. Civ. P. 16) PRETRIAL STATEMENT**

# PROOF OF SERVICE

I am employed in the City and County of Los Angeles, California.  I am over the age of eighteen years and not a party to the within entitled action; my business address is 11620 Wilshire Blvd., Suite 500, Los Angeles, CA 90025.

On October 12, 2017, I caused to be served the foregoing documents described as:

**JOINT RULE 281 (Fed. R. Civ. P. 16) PRETRIAL STATEMENT**.

On the interested parties as follows:

Mauro Fiore, Jr.
Sergio J. Puche
LAW OFFICES OF MAURO FIORE, JR.
136 E. Lemon Ave.
Monrovia, CA 91016
Telephone No.: (626) 856-5856
Facsimile No.: (626) 386-5828
Email:  mfiore@fiorelegal.com
        spuche@fiorelegal.com

**[X]**    [by ELECTRONIC SUBMISSION] I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.

DATED: October 12, 2017

_____
Kylee Ashmore